UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARVIN FULFORD, ET AL.                                 CIVIL ACTION

VERSUS

CLIMBTEK, INC., ET AL.                              NO.: 16-00016-BAJ-EWD

## RULING AND ORDER

Before the Court is the **Supplemental Motion to Dismiss (Doc. 61)** filed by Michigan Ladder Company, LLC ("Michigan, LLC"). In its motion, Michigan, LLC asserts that the Court lacks personal jurisdiction over it. Marvin Fulford and Rena Fulford ("Plaintiffs") and Intervenor Plaintiff, the State of Louisiana, Office of the Governor, Division of Administration, Office of Risk Management ("ORM") filed memoranda in opposition, (Docs. 76, 82, 99), and Michigan, LLC filed reply memoranda. (Doc. 94, 95, 108). The Court has subject matter jurisdiction under 28 U.S.C. § 1332. For the following reasons, Michigan, LLC's motion is DENIED.

I.    BACKGROUND

This suit arises out of an allegedly defective ladder. (Doc. 102 at ¶ 6). On February 2, 2015, Marvin Fulford was allegedly servicing a suspended heating unit in Winnsboro, Louisiana while standing on an articulated ladder when it collapsed. *Id.* Mr. Fulford then allegedly fell, fractured his spine, and suffered a traumatic brain injury. *Id.* Plaintiffs filed the instant action on January 8, 2016, naming Climbtek, Inc., the alleged manufacturer of the ladder, as the sole defendant. (Doc. 1 at p. 2). Plaintiffs brought claims under the Louisiana Products Liability Act, claiming that

1

the ladder was defective and unreasonably dangerous. (Doc. 1 at p. 2). Plaintiffs then advised the Court that Climbtek, an Illinois company, had been dissolved, and they requested additional time to determine whether it was a viable Defendant. (Doc. 7 at p. 2). On June 1, 2016, Plaintiffs filed their Second Amending Complaint, adding Michigan, LLC as a defendant. (Doc. 11 at p. 1). Plaintiffs alleged that Michigan, LLC manufactured the ladder at issue, it purchased Climbtek's assets, and it is therefore responsible for Plaintiffs' injuries. (*Id.* at ¶ 4, 16-B). On June 30, 2017, the Magistrate Judge granted Plaintiffs Motion for Leave to File its Third Amended Complaint, which named seven additional defendants. (Doc. 101).

On August 4, 2016, the Court ordered that Plaintiffs show cause why their claims against Climbtek should not be dismissed for failure to effectuate service of process. (Doc. 20). At the show cause hearing, Plaintiffs requested time to conduct discovery to determine whether Michigan, LLC was liable for Climbtek's obligations. (Doc. 23). The Court granted Plaintiffs request, and allowed Plaintiffs seventy-five days to conduct limited discovery on the relationship between Michigan, LLC and Climbtek. *Id.* The Court granted one extension of time, and discovery concluded on January 1, 2017. (Doc. 37).

While this discovery was ongoing, Michigan, LLC filed its first motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(2), asserting that the Court lacked personal jurisdiction over it. (Doc. 25). The Court denied the motion without prejudice, concluding that the Court lacked sufficient information regarding the relationship between Michigan, LLC and Climbtek. (Doc. 60 at p. 3). In the

2

interest of judicial efficiency, the Court ordered Michigan, LLC to refile its motion to dismiss with additional evidence. (Doc. 60 at p. 3-4). Michigan, LLC then refiled its motion to dismiss on February 3, 2017. (Doc. 61).

## II. LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the Court lacks personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). Where a defendant disputes the factual bases for jurisdiction, courts "may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). Courts have broad discretion over the scope of discovery. *Walk Haydel*, 517 F.3d at 241.

Where, as here, a court does not hold an evidentiary hearing on jurisdictional issues, "it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Id.* at 241 (internal citations omitted). At this stage, the plaintiff also need only present a *prima facie* case for personal jurisdiction. *Id.* However, in assessing whether the plaintiff has presented a *prima facie* case for personal jurisdiction, courts "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed*

3

*Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015) (quoting P*anda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).

## III. DISCUSSION

A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that defendant, and the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. La. R.S. § 13:3201(B).

The exercise of personal jurisdiction over a nonresident defendant satisfies the Due Process Clause if: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). These required "minimum contacts" may be established by contacts sufficient to assert specific jurisdiction or general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

4

A. General Jurisdiction

A court may exercise general personal jurisdiction over a defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe*, 326 U.S at 317). A corporation is generally only "at home" in the state of its incorporation or its principal place of business. *BNSF R. Co. v. Tyrrell*, 581 U.S. ——, ——, 137 S.Ct. 1549, 1558 (2017) (internal citations omitted). "Injecting a product, even in substantial volume, into a forum's 'stream of commerce,' without more, does not support general jurisdiction." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

Plaintiffs do not suggest that Michigan, LLC is incorporated in Louisiana or that it has its principal place of business in Louisiana. (Docs. 76 and 82). Instead, they argue that the Court has general jurisdiction over Michigan, LLC because it was foreseeable that Michigan, LLC's ladders would be purchased by a Louisiana company or shipped to Louisiana. (Doc. 82 at p. 14). However, it is well-established that injecting a product into a forum's stream of commerce cannot establish general jurisdiction. *Jackson*, 615 F.3d at 579. A company cannot be haled into a Louisiana court for *any purpose* merely because they put some products into the stream of commerce that reach Louisiana. This Court therefore does not have general jurisdiction over Michigan, LLC.

5

**B. Specific Jurisdiction**

A court may exercise specific jurisdiction when a corporation has purposefully directed its activities to the forum state and "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citing *Burger King*, 471 U.S. at 472). In cases involving products sold or manufactured by foreign defendants, courts apply the "stream-of-commerce" approach. *Ainsworth v. Moffett Eng'g*, Ltd., 716 F.3d 174, 177 (5th Cir. 2013). Under this approach, minimum contacts exist when the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id.* (quoting *Bearry*, 818 F.2d at 374). However, "mere foreseeability or awareness [that a product would enter the forum state is] a constitutionally sufficient basis for personal jurisdiction [only] if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* (quoting *Luv N' Care*, 438 F.3d at 470). Additionally, "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.'" *Id.* (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012)).

Plaintiffs and Intervenor Plaintiff argue that the Court has specific jurisdiction over Michigan, LLC because it knew that its ladders would be used and sold in Louisiana. (Docs. 76 at p. 5 and 82 at p. 14). However, while Plaintiffs have established that Michigan, LLC knew that *some* of its ladders would be sold in

Louisiana, Plaintiffs have not established that the ladder *at issue*—the Climbtek ladder—would be sold in Louisiana. (Docs. 92-4 at 115:3-11 and 28:19-22). Plaintiffs must make a *prima facie* case that Michigan, LLC purposefully directed the Climbtek ladder to Louisiana. Indeed, Courts have long held that to exercise specific jurisdiction, the defendant's activities directed to the forum state must relate to the alleged injuries. *See Burger King*, 471 U.S. at 472. As a result, "[i]n order to exercise specific personal jurisdiction over a defendant under a stream of commerce theory, the product *at issue* must have reached the forum state while still in the stream of commerce." *See Istre v. Montco Offshore, Inc.*, No. CV 12-2054, 2016 WL 1110227, at *3 (E.D. La. Mar. 22, 2016) (emphasis added). The Court therefore does not have specific jurisdiction over Michigan, LLC because there is no evidence that it knew the Climbtek ladders would be used or sold in Louisiana.

Plaintiffs next argue that there is specific jurisdiction over Michigan, LLC because it is the successor company liable for the Climbtek ladder. (Doc. 82 at p. 2). Courts may exercise personal jurisdiction over a corporation where the "corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction[.]" *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). "The theory underlying these cases is that, because the two corporations. . . are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other[.]" *Id.* Thus, to exercise personal jurisdiction over Michigan, LLC, the Court must engage in a two-step analysis. First, it must determine whether there is

7

a corporation that would be subject to the Court's jurisdiction. Second, it must determine whether Michigan, LLC is the successor in interest to that company.

Before engaging in this analysis, the Court will review the relevant cast of corporate characters. First, there is Michigan Ladder Company, Inc. ("Michigan, Inc.") a ladder manufacturer, which was formed in 1901. (Doc. 92-3 at 137:8-12). Robert Nissly served as its President from 1967 until February 2014. (Docs. 92-3 at 46:23-25 and 62-2). In February 2014, Michigan, LLC purchased Michigan, Inc. (Doc. 62-2). Michigan, LLC was formed in January 2014 specifically to acquire Michigan, Inc. (Doc. 92-2 at 116:9-12).[1] Thomas Harrison is the President of Michigan, LLC. *Id.* at 10:1. Most of Michigan, LLC's employees were employed by Michigan, Inc. before it was acquired (82-10 at p 18). Mr. Harrison also served as the general manager of Michigan, Inc. from 2004 until he became the President of Michigan, LLC. (Doc. 92-3 at 35:1-5). Next, there is Climbtek. Mr. Nissly incorporated Climbtek in 2001, and served as its President. (Doc. 92-3 at 127:1). Climbtek went out of business in 2010. (Docs. 82-2 at 10:3-11:7 and 17:17-22).

The Court has specific jurisdiction over Michigan, LLC because Plaintiffs have made a *prima facie* case that Michigan, Inc. manufactured and sold the ladder at issue—the Climbtek ladder—and Michigan, LLC is the successor in interest to Michigan, Inc. Further, resolving all factual disputes in favor of the Plaintiffs, the record establishes that Michigan, Inc. knew that its ladders would be sold in Louisiana. (Doc. 82 at p. 14). Michigan, LLC claims that Michigan, Inc. never

---

[1] There were several companies that preceded Michigan, LLC that were formed to acquire Michigan, Inc., however, for clarity the Court refer to them collectively as Michigan, LLC.

manufactured or sold the Climbtek ladder. (Doc. 61-1 at p. 6). In the deposition testimony of Mr. Nissly, Michigan, Inc.'s President, he said that Michigan, Inc. did not have the capability to manufacture the Climbtek ladder because Michigan, Inc. only made wooden ladders, and the Climbtek ladder was constructed from aluminum. (Doc. 92-3 at 200:23-201:10).

Plaintiffs, however, produced copies of www.MichiganLadder.com from 2007-2010, in which Michigan, Inc. refers to the Climbtek ladder as "Our Articulating ClimbTek Ladder" and states that the ladder uses "our exclusive Precision Locking Hinge and Patented One Hand Release Rod."[2] (Docs. 99-1 and 99-2). The website therefore apparently shows that Michigan, Inc. held itself out as the manufacturer and patent holder for the Climbtek Ladder. The President of Michigan, Inc. also testified in a deposition that it knew that its ladders were sold in Louisiana. (Doc. 92-3 at 145:15-21). At this stage, where the Court has not held an evidentiary hearing on jurisdictional issues, the Court must resolve all factual disputes in plaintiff's favor. *See Walk Haydel*, 517 F.3d at 241. Thus, while Michigan, LLC has presented some evidence that Michigan, Inc. did not manufacture or sell the Climbtek Ladder, Plaintiffs have produced evidence that apparently contradicts this assertion. The Court concludes then that Plaintiffs have made a *prima facie* case that Michigan, Inc. is subject to the Court's jurisdiction because Plaintiff's presented some evidence that

---

[2] Plaintiffs obtained these copies from the Internet Archive, a non-profit library that archives the internet. (Doc. 99 at p. 2). Michigan, LLC does not dispute the authenticity of these achieved copies. (*see* Doc. 108). Although the website does not specify whether it is for Michigan, Inc. or Michigan, LLC, the Court assumes that it must be for Michigan, Inc. because Michigan, Inc. was in existence from 2007-2010, while Michigan, LLC was not incorporated until 2014. (Doc. 61-3 at ¶ 4).

it produced the Climbtek ladder and it was foreseeable that its ladders would be sold in Louisiana.

Because the Court finds that Michigan, Inc. would be subject to the Court's jurisdiction, the Court will next examine whether Michigan, LLC is the successor in interest to Michigan, Inc. Under Louisiana law, a purchaser corporation is generally not liable for the assets of the corporation that it acquires.[3] *Monroe v. McDaniel*, 207 So. 3d 1172, 1180 (La. Ct. App. 2016) (quoting *Golden State Bottling Co., Inc. v. National Labor Relations Board*, 414 U.S. 168, 182 n.5 (1973). However, it is liable "where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability." *Id.* Plaintiffs principally rely on the second exception. (Doc. 82 at p. 2).

Under the second exception, a purchaser obtains successor liability if it is a mere continuation of the seller. To establish that a purchaser is a mere continuation of the acquired company, the purchaser "must have purchased all or substantially all the assets of another." *J.D. Fields & Co. v. Nottingham Construction Co.*, LLC, 184 So.3d 99, 103 (La. Ct. App. 2015). Next, courts must consider a variety of factors, including whether the "predecessor and successor have common shareholders, directors, officers, or even employees . . . prior business relationships should be considered, as should the continuity of the identity of the business in the eyes of the public." *Id.*

---

[3] Michigan, LLC asserts that Louisiana law governs the question of successor liability, and Plaintiffs do not object. (Doc. 61-1 at p. 9).

Here, the undisputed purchase agreement between Michigan, Inc. and Michigan, LLC reflects that Michigan, LLC purchased all of Michigan, Inc.'s assets. (Doc. 62-2 at pp. 1, 11). Drawing all factual disputes in the Plaintiff's favor, the record also establishes that Michigan, LLC and Michigan, Inc. shared many employees. The President of Michigan, LLC testified in his deposition that of its approximately twenty full time employees, most were previously employed by Michigan, Inc. (82-10 at 17:24-18:6). This includes Michigan, LLC's high-level employees, such as the controller, the plant manager, the sales manager, and the dock supervisor. *Id.* at 17:18-18:22. Michigan, LLC and Michigan, Inc. also shared corporate officers. Thomas Harrison was the general manager and CEO of Michigan, Inc. from 2004 until Michigan, LLC bought the company in 2014. Then Mr. Harrison immediately began to serve as the President of Michigan, LLC. (Doc. 92-4 at 55:6-55:18). There was also continuity of the identity of the business in the eyes of the public because both Michigan, Inc. and Michigan, LLC presented themselves to the public as Michigan Ladder Company. Michigan, LLC is therefore the successor in interest to Michigan, Inc., because it is a mere continuation of Michigan, Inc.

The Court also finds that exercising personal jurisdiction over Michigan, LLC would not offend traditional notions of fair play and justice because the accident occurred in Louisiana, it was caused by an allegedly defective ladder shipped to Louisiana, and the injured party is a Louisiana resident. *See Latshaw*, 167 F.3d at 211 (citing *International Shoe*, 326 U.S. at 316).

## IV. CONCLUSION

At this early stage in the litigation, when the Court must draw all factual disputes in Plaintiffs favor, the Court concludes that Plaintiffs have established a *prima facie* case for personal jurisdiction. The Court would have specific jurisdiction over Michigan, Inc., and Michigan, LLC is that company's successor in interest. Consequently, Plaintiffs have climbed enough rungs of the jurisdictional ladder to support personal jurisdiction at this point.

Accordingly,

**IT IS ORDERED** that the Supplemental Motion to Dismiss under Rule 12(b)(2) filed by Michigan, LLC is **DENIED**.

Baton Rouge, Louisiana, this 20th day of September, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA