UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARVIN FULFORD
AND RENA FULFORD

CIVIL ACTION

NO. 16-16-BAJ-EWD

VERSUS

MICHIGAN LADDER COMPANY,
LLC, ET AL.

## RULING AND ORDER

Before the Court is a combined Motion for Sanctions (the "Motion for Sanctions") and Motion to Strike Defendants' Defenses and Defendants' Expert, Thomas Bayer (the "Motion to Strike"),[1] filed by Marvin Fulford (hereinafter, "Marvin") and Rena Fulford ("Rena") (collectively, "Plaintiffs"). The Motions are opposed by Defendants Michigan Ladder Company, LLC, Robert Nissly ("Nissly"), Thomas P. Harrison, Nissco, Inc., Amherst Fund, II, LLC, Harrison Industries, LLC, Michigan Ladder Properties, LLC, and Michigan Ladder Company, Inc. (collectively, "Defendants").[2] For the reasons that follow, the Motion for Sanctions is **DENIED** and the Motion to Strike is **DENIED**.

## I. Background

On or about February 2, 2015, Marvin was attempting to light a heater suspended from the ceiling while in the course of his employment with the LSU Sweet Potato Research Institute in Winnsboro, Louisiana when the "Climbtek"[3] ladder that he was standing on, unexpectedly

---

[1] R. Doc. 144.
[2] R. Doc. 153.
[3] "Climbtek" was originally named as a defendant and alleged to be the manufacturer of the ladder at issue. Climbtek was ultimately dissolved and/or went out of business. *See* R. Doc. 113, p. 8 and R. Doc. 152, p. 2. Plaintiffs have amended several times to name a number of additional defendants, including Defendant Michigan Ladder, Inc. (which was ultimately sold to new owners and became Defendant Michigan Ladder, LLC), as allegedly bearing liability for and/or being associated with the subject Climbtek ladder. *See* R. Doc. 113, pp. 2, 8-9. For ease of reference, the Court will refer to the ladder herein as the "Climbtek" ladder.

collapsed.[4] The collapse allegedly caused Marvin to strike his head on the concrete floor and to suffer serious injuries, including a fractured vertebra in his neck and a brain injury.[5]

On January 8, 2016, Plaintiffs filed suit in this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, alleging that Marvin's injuries were caused by Defendants' Climbtek ladder, which was unreasonably dangerous under the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et seq.,* and negligently designed/manufactured.[6] Plaintiffs seek a combined $3.5 million dollars in damages for medical expenses, lost earnings/loss of earning capacity, physical impairment, loss of enjoyment of life, and loss of consortium for Rena.[7]

On October 4, 2018, Plaintiffs filed the instant Motion for Sanctions and Motion to Strike.[8] On October 11, 2018, Defendants filed their opposition thereto.[9] On October 19, 2018, a status conference and hearing was held on the Motion for Sanctions and Motion to Strike, at which time the parties presented argument.[10]

## II. Arguments of the Parties

### A. Motion for Sanctions

#### 1. Plaintiffs' Arguments

Plaintiffs aver that, at the April 2017 and August 2018 depositions of Nissly, the former President of Michigan Ladder Company/Climbtek, testified that all business records relating to the design, testing, manufacture and assembly for the Climbtek ladder at issue were destroyed

---

[4] R. Doc. 144-1, p. 1 and R. Doc. 102, ¶ 6.
[5] R. Doc. 144-1, p. 1 and R. Doc. 102, ¶¶ 6, 31-32.
[6] R. Doc. 102, ¶¶ 1, 12-20. As mentioned, Plaintiffs have filed three amended complaints adding additional Defendants.
[7] R. Doc. 1, ¶¶ 31-32.
[8] R. Doc. 144.
[9] R. Doc. 146.
[10] R. Doc. 149. Currently pending before the District Judge is a Motion to Permit Destructive Testing and to Add Expert Metallurgist Based on Critical New Evidence and for Expedited Consideration, also filed by Plaintiffs. R. Doc. 140. As the Motion for Testing raised issues related to the issues presented by the Motions for Sanctions and to Strike, the parties were permitted to present argument as to all of the Motions at the October 19, 2018 hearing.

(collectively referred to herein as "design and testing records").[11] Plaintiffs also contend that Nissly testified on December 21, 2010 in a different lawsuit, *Horton v. Climbtek*,[12] then pending in the U.S. District Court for the Middle District of Florida, that the design and testing records were destroyed.[13]

On September 27, 2018, Plaintiffs notified Defendants of their intention to file a Motion for Destructive Testing and to Add Expert Metallurgist (the "Motion for Testing") because of Nissly's testimony that the records were destroyed. The next day, while Plaintiffs were in the process of electronically filing their Motion for Testing (which is currently pending before the District Judge), Plaintiffs aver that they received an email from defense counsel, wherein Defendants enclosed a link to a file that contained over 1,000 design and testing records for the Climbtek ladder that Nissly was able to obtain from Climbtek's Third-Party Administrator/claims handler ("TPA").[14] Plaintiffs claim that Nissly has never provided an explanation as to why he previously testified that the records had been destroyed.[15]

Plaintiffs now seek sanctions against Nissly and the TPA (but not defense counsel) for Nissly's failure to admit that the design and testing records existed and for Nissly's and the TPA's failure to produce them in a timelier manner to Plaintiffs. Plaintiffs argue that it is implausible that Nissly could have been unaware that design and testing records existed, and Plaintiffs find it suspicious that the records were produced only after Plaintiffs informed Defendants of their intention to file the Motion for Testing and after the expiration of "all expert deadlines."[16]

Plaintiffs concede that Fed. R. Civ. P. 37 does not appear to apply to the instant scenario,

---

[11] R. Doc. 144-1, pp. 1-2, *citing* R. Doc. 144-2. *See id.* at pp. 25- 28, 31-32, 35.
[12] Civ. No. 10-413, (M.D. Fl. May 13, 2010).
[13] R. Doc. 144-1, p. 9 *citing* R. Doc. 144-2.
[14] R. Doc. 144-1, pp. 1-2.
[15] R. Doc. 144-1, p. 5.
[16] R. Doc. 144-1, pp. 2-3.

3

and, while the Court may have authority under Fed. R. Civ. P. 26(e) and/or 26(g) to impose sanctions, Plaintiffs argue the Court should rely on its inherent power to award sanctions due to Nissly's and the TPA's egregious bad faith conduct set forth above.[17] Plaintiffs suggest sanctions in the form of an award of Plaintiffs' attorney's fees, travel expenses, videographer and court reporter costs associated with Nissly's deposition and/or an admonishment to Nissly and the TPA for failing to provide the design and testing records prior to the expiration "of all expert deadlines." Plaintiffs also seek an explanation from Nissly and the TPA as to why the records were not produced earlier.[18]

### 2. Defendants' Opposition

Defendants oppose Plaintiffs' Motion for Sanctions on several grounds.[19] First, Defendants argue that Nissly, age 81, truthfully and accurately testified in his April 2017 and August 2018 depositions that he did not maintain any records for Climbtek after the company went out of business 8-9 years ago in 2009-2010.[20] In support of this contention, Defendants proffer Nissly's affidavit, wherein Nissly states that he truthfully testified in both depositions associated with this case that he had not maintained any design or testing records for Climbtek after the business closed.[21] Nissly avers that after his August 2018 deposition, he discussed with his counsel and the TPA for this case the possibility that the design and testing records could have been kept

---

[17] R. Doc. 144-1, p. 4 *citing Bratka v. Anheuser-Busch Company*, No. 93-694, 164 F.R.D. 448 (S.D. Ohio Dec. 11, 1995).
[18] R. Doc. 144-1, p. 5.
[19] Defendants' Opposition urges several arguments that are not relevant to the issues presented by the instant Motions, including arguments relating to which entity bears responsibility for the Climbtek ladder at issue, the Court's personal jurisdiction over Defendants (which issue has already been ruled upon by the District Judge), what caused Plaintiff to fall from the ladder, as well as response to Plaintiffs' extraneous argument regarding the type of locking bolt and bolt coating allegedly used in the Climbtek ladder (which forms the basis for Plaintiffs' Motion for Testing). R. Doc. 153, pp. 2-5 and pp. 11-14. As these arguments and proffered evidence in support thereof do not have bearing on the Court's resolution of the instant Motions, they are not considered herein.
[20] R. Doc. 153, p. 6.
[21] R. Doc. 153-2, ¶¶ 2-3.

4

by the TPA as part of prior Climbtek claim files, and Nissly authorized the TPA to search for them and provide them to counsel if they were found.[22] According to Nissly and/or Defendants, the TPA found the applicable design and testing records and provided them to defense counsel, who then produced them to Plaintiffs herein.[23] However, Nissly avers that none of those records were in his personal possession after Climbtek went out of business, and prior to his discussions with counsel and the TPA described above, he was also not aware that the TPA maintained these records.[24]

Defendants further contend that in Nissly's December 2010 deposition testimony given in the *Horton* matter, and relied on by Plaintiffs, Nissly does not state that the documents at issue were destroyed at that time.[25] Rather, according to Defendants, Nissly's *Horton* testimony shows that some records were produced in *Horton*,[26] and ultimately, the *Horton* records from the TPA's closed *Horton* file were those produced to Plaintiffs in this case (and that Plaintiffs should have known the documents were produced in *Horton*, *see* discussion, *infra*.). Defendants admit that they also did not think to look in the *Horton* file for the design and testing records either until after Nissly's August 2018 deposition. Once they did think to do so, they located the design and testing records and then produced them to Plaintiffs within fifteen days of defense counsel's receipt.[27]

Defendants assert that the design and testing records were not intentionally hidden from Plaintiffs; rather, Defendants have also endeavored to locate design and testing records so that Defendants can establish their defense that there is/was no defect in the Climbtek ladder. In fact,

---

[22] R. Doc. 153-2, ¶ 5.
[23] R. Doc. 153-2, ¶ 6.
[24] R. Doc. 153-2, ¶ 7.
[25] R. Doc. 153, p. 6.
[26] R. Doc. 153, p. 7 *citing* R. Doc. 153-4, p. 26 ("Q: 'Did you—what did you retain when the company was closed out? Are there any documents retained from the company?' A: 'All the documents that have been provided to you are what we retained.'")
[27] R. Doc. 153, p. 7.

Defendants contend, the documents recently produced actually assist Defendants in defending the case because the documents allegedly show that the Climbtek ladder met or exceeded all applicable testing requirements and was subjected to independent testing by a third party.[28] Defendants state that defense counsel and Nissly discussed on several occasions the possibility of locating the old Climbtek design and testing records but Nissly contended that he did not maintain any after the business closed. The parties brainstormed other potential repositories and ultimately asked the TPA, which proved fruitful.[29] Defendants contend that counsel was reviewing the design and testing records to determine what they were, in the midst of working other cases, when he received notification from Plaintiffs of their intention to file their Motion for Testing. Defense counsel claims that he did not withhold the records until Plaintiffs' notice of filing; rather, Plaintiffs' notice simply prompted counsel to voluntarily forward the records he had recently received from the TPA as a supplement to Defendants' Rule 26 disclosures, which was timely.[30]

Defendants argue that Plaintiffs incorrectly insinuate that there was an outstanding discovery request for the design and testing records, but that Plaintiffs have not provided any such discovery request to the Court. Rather, Defendants aver that Plaintiffs only propounded discovery related to the design and testing records to Climbtek, an entity which is not in existence or represented herein, and to Nissly, after the design and testing records were produced.[31] Defendants argue that Plaintiffs' authority in support of sanctions is distinguishable on the facts[32] and assert that Plaintiffs' Motion for Sanctions should be denied because Defendants have not made misrepresentations to Plaintiffs, have not violated court orders, and have timely produced the

---

[28] R. Doc. 153, pp. 8 and 11.
[29] R. Doc. 153, pp. 8-9.
[30] R. Doc. 153, pp. 9-10.
[31] R. Doc. 153, p. 10.
[32] R. Doc. 153, p. 18, *citing Bratka,* 164 F.R.D. 448.

6

design and testing records.

   **B. Motion to Strike**

   **1. Plaintiffs' Arguments**

As a sanction for Defendants' failure to timely produce the design and testing records, Plaintiffs' Motion to Strike seeks exclusion of Defendants' defenses, Defendants' expert Thomas Bayer ("Bayer"), and Bayer's expert report, pursuant to Fed. R. Civ. P. 37(c)(1), "Failure to Disclose or Supplement," which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii) provides for the following sanctions (when a party disobeys a discovery order):

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; and,
>
> (iii) striking pleadings in whole or in part….

Plaintiffs argue that, in order to determine whether Defendants' failure to timely produce

7

the design and testing records was "substantially justified or harmless" as referenced in Fed. R. Civ. P. 37(c)(1), the following factors, set forth by this Court in *Broussard v. Go-Devil Manufacturing Co. of La, Inc.* (the "*Broussard* factors"), should be considered: (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence to come in; (3) the possibility for curing such prejudice by granting a continuance; and,(4) the explanation, if any, for the party's failure to comply with the disclosure requirements.[33] Plaintiffs further contend that the burden is on Defendants, as the parties failing to disclose the information, to prove their failure was harmless, and exclusion of evidence and/or a witness is appropriate when late disclosure of evidence deprives a party of the opportunity to conduct an effective deposition of a witness.[34]

Analyzing the above factors, Plaintiffs recognize that the design and testing records are "critical" (*i.e.,* important),[35] but contend that Defendants have not offered a credible explanation for their failure to timely produce the records. Plaintiffs point out that Defendants failed to produce the design and testing records until thirty-three months after the lawsuit was filed (and after the expert deadlines had passed), which establishes that Defendants failed to exercise due diligence in searching for them.[36] Further, Plaintiffs now face prejudice because they must submit 1,188 pages of newly-produced design and testing records to Plaintiffs' liability expert for a complete re-evaluation of all of Plaintiffs' expert's opinions as set forth in his July 16, 2018 report.[37] Plaintiffs therefore contend that Defendants' explanation for their failure to produce the requested design and testing records for the Climbtek ladder in a more timely manner is unjustified.[38]

---

[33] R. Doc. 144-1, p. 6 *citing Broussard v. Go-Devil Manufacturing Co. of La., Inc*., 2014 WL 354525 (M.D. La. Jan. 23, 2014).
[34] R. Doc. 144-1, p. 6 *citing Harmon v. Georgia Gulf Lake Charles, LLC*, 476 F.App'x 31, 39 (5th Cir. 2012).
[35] R. Doc. 144-1, p. 7.
[36] R. Doc. 144-1, pp. 6-7.
[37] *Id.* at p. 7.
[38] Plaintiffs' Opposition presents argument that is not relevant to the instant Motions for Sanctions and to Strike; specifically, Plaintiffs' arguments that the Climbtek ladder at issue appears to contain the same mechanisms as those

As a Rule 37 sanction for Defendants' lack of justification for their untimely production and the prejudice faced by Plaintiffs, Plaintiffs specifically seek exclusion of Bayer's anticipated testimony and Bayer's report.[39] Defendants retained Bayer as their liability expert in *Horton v. Climbtek*.[40] Therein, Bayer submitted two affidavits, both dated March 4, 2011 ("the *Horton* Affidavits").[41] Plaintiffs argue that Bayer claims to have reviewed voluminous design and testing records produced by Climbtek in the *Horton* Affidavits.[42] Further, Bayer submitted his expert report in this case on September 17, 2018, also allegedly having reviewed those records. Plaintiffs argue that they are prejudiced, particularly with respect to the current March 25, 2019 trial date, by the foregoing, because Bayer reviewed the newly-produced Climbtek documents in the *Horton* litigation (and the litigation herein) prior to submitting his expert report, but Plaintiffs did not receive the documents until after Bayer produced his expert report and after Plaintiffs produced their expert report. Plaintiffs argue that they have been "ambushed," and it is suspicious that Bayer submitted the *Horton* Affidavits in March 2011, which reference the design and testing records ultimately produced here, *after* Nissly testified on December 21, 2010 that the Climbtek documents were destroyed. For these reasons, Plaintiffs request that Bayer's report be stricken and that Bayer be prohibited from testifying at trial.[43]

2. **Defendants' Opposition**

Defendants argue that Bayer did not review the design and testing records recently produced to Plaintiffs to reach his conclusions in his expert report produced herein, as Bayer did

---

involved in a recall of a different ladder. R. Doc. 144-1, pp. 7-8. This argument may be relevant to Plaintiffs' Motion for Testing but has no bearing on the Court's resolution of the instant Motions.
[39] While Plaintiffs' Motion references striking Defendants' defenses, Plaintiffs offer no argument or authority in support of this relief.
[40] R. Doc. 144-1, p. 8.
[41] R. Doc. 144-7.
[42] R. Doc. 144-1, p. 9.
[43] R. Doc. 144-1, p. 9.

not have the design and testing records at the time he drafted his report in this case because Defendants had not yet given Bayer those records. Defendants contend that Bayer reviewed only the records listed in his report to reach his conclusions.[44] Defendants further argue that it is not unfair for Defendants to call Bayer as an expert simply because he examined a Climbtek ladder and had access to Climbtek records in the past. Rather, Defendants contend that it is commonplace for parties to retain experts with prior experience about a disputed issue so that the expert's opinion will be given more weight, and further, courts consider an expert's personal experience with the issues for which he is retained.[45] Defendants argue that Bayer and/or his report should not be excluded because Bayer worked on another case involving a Climbtek ladder, and there is no authority supporting this position.[46]

Furthermore, Defendants point out that Plaintiffs, not Defendants, have been obtaining *Horton* filings, including Bayer's *Horton* Affidavits, since Nissly's April 2017 deposition. In Defendants' view, Plaintiffs presumably knew, or should have known, that the recently-produced design and testing records were also produced to the *Horton* plaintiffs, considering that one of Bayer's Affidavits in *Horton* references his review of those records.[47] Defendants contend that Plaintiffs, like Defendants, simply missed the fact that the records might be available because they were produced in *Horton*. Defendants suggest that Plaintiffs are now raising this argument in an attempt to have relevant information regarding whether there is a defect in the subject ladder excluded.[48]

Defendants urge the Court to apply the following factors, set forth in *Verzwyvelt v. St. Paul*

---

[44] R. Doc. 153, p. 15, *citing* R. Doc. 146-4.
[45] R. Doc. 153, pp. 15-16.
[46] *Id*.
[47] *Id*. at p. 17.
[48] R. Doc. 153, p. 17.

10

*Fire & Marine. Ins. Co.*, in considering sanctions: (1) the party's explanation, if any, for failure to comply with the scheduling order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness's testimony.[49] Defendants contend that none of these factors, or the similar *Broussard* factors, support the striking of Defendants' expert, as Defendants have provided an explanation for why the records were not identified sooner, and any potential prejudice could be cured by a continuance of either the trial date or at least the expert deadlines.[50] [51]

## III. Law and Analysis

### A. Motion for Sanctions

Plaintiffs seek sanctions upon Nissly and/or the TPA who housed the records that were ultimately produced to Plaintiffs for their "bad faith conduct" pursuant to the Court's inherent power to impose sanctions, and not pursuant to any particular federal rule. The Court does have the inherent power to impose sanctions for bad faith conduct, "and the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."[52] Plaintiffs' basis for sanctions against Nissly and/or the TPA is solely due to Plaintiffs' contention that Nissly failed to admit that these records existed in his April 2017 and August 2018 depositions, failed to produce the design and testing records to Plaintiffs until after "all expert deadlines [had] passed,[53] and allegedly testified in 2010 in the *Horton* matter that the documents "had been disposed of," yet

---

[49] *Verzwyvelt*, No. 99-2364, 204 F.R.D. 309, 311 (W.D. La. Sept. 27, 2001) *citing Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).
[50] R. Doc. 153, p. 19.
[51] Defendants contend that Plaintiffs' reliance on *Harmon*, wherein the Fifth Circuit upheld the lower court's decision to strike the plaintiff's experts' reports because they failed to comply with Fed. R. Civ. P. 26, to strike their testimony because it was inadmissible under Fed. R. Evid. 401 and 702, and to strike plaintiff's other experts because they were not timely designated as "will-call" witnesses, is misplaced because the *Harmon* plaintiff repeatedly violated the court's scheduling order and attempted to add witnesses two days before trial, all of which is factually distinguishable from the instant matter. R. Doc. 153, pp. 20-21 *citing Harmon*, 476 F.App'x at 34, 37-38 and 40.
[52] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S.Ct. 2123, 2135, 115 L. Ed. 2d 27 (1991).
[53] R. Doc. 144-1, pp. 3, 5, and 7.

11

one year later, Climbtek's expert Bayer attested in his *Horton* Affidavit that Bayer reviewed those documents.[54]

As an initial matter, contrary to Plaintiffs' continued assertion in brief, the production of the design and testing records was not after "all expert deadlines" had expired. The production was September 28, 2018; the deadline to complete fact and expert discovery was October 31, 2018.[55]

Next, Plaintiffs offer their speculation that Nissly was untruthful, based on Nissly's deposition testimony from all three depositions. However, a review of all of the Nissly testimony provided does not establish untruthfulness. The 2010 Nissly deposition transcript provided does not indicate that Nissly specifically testified that the design and testing records at issue were destroyed or disposed of at that time, as Plaintiffs contend.[56] At most, Nissly testified in 2010 that payroll, personnel files, organizational charts, engineer notes, logs and diaries, and documents that "were kept for tax purposes" were not retained,[57] but referred to at least some documents being produced in *Horton* (although they are not described).[58] Nissly's deposition testimony in this case in 2017 and 2018 suggests that no records were maintained by the company,[59] these depositions were taken *7-8 years* after the 2010 deposition, and it is not unusual for a deponent's recall of events to falter over that period of time.

---

[54] R. Doc. 144-1, pp. 1-2, 9.
[55] R. Doc. 135, May 22, 2018 (Amended Scheduling Order).
[56] R. Doc. 144-2, pp. 12-23.
[57] *Compare* R. Doc. 144-2, p. 26-27 and R. Doc. 153-4, p. 2.
[58] R. Doc. 153-4, p. 2.
[59] In his August 2018 deposition in this case, Nissly was asked: "So when you gave your deposition on December 21, 2010, do you recall saying that all the records were destroyed?" Nissly answered: "Right." R. Doc. 144-2, p. 26. Nissly further testified in 2017 that he had previously testified in *Horton* that he had no records of any personnel that assembled the ladders at the time of the 2010 *Horton* deposition. R. Doc. 144-2, p. 32. Also in 2017, when asked about retention of testing records, Nissly testified that everything "was no longer needed once the company was gone." R. Doc. 144-2, pp. 31-32.

Further, the deposition transcripts reflect that Nissly testified in 2017 and 2018 that Climbtek did not retain any design and testing records, and those records were ultimately found in the possession of the TPA. Therefore, Nissly's testimony does not appear contradictory. Defendants set forth a credible explanation for the delay in the finding of these records, which is that they did not think to ask the TPA for them.[60] Nissly's affidavit supports this explanation, wherein he states he was simply unaware that the TPA would have the design and testing records.[61] The Court simply does not find any indication of untruthfulness or bad faith conduct in Nissly's testimony, certainly not enough to warrant the imposition of sanctions.[62]

The Court also does not find any indication of bad faith conduct in the timing of the production of the design and testing records by Defendants, although Defendants incorrectly argue that there were no specific outstanding discovery requests for these records (prior to their production).[63] While Plaintiffs have not provided discovery requests that seek the design and testing records as an exhibit to the instant Motion, a review of the exhibits attached to the Motion for Testing reveals that Plaintiffs propounded discovery requests on September 5, 2018, which appear to encompass some requests for the design and/or testing records.[64] Even so, Defendants produced the design and testing records on September 28, 2018, which was before their deadline to respond to Plaintiffs' written discovery pursuant to Fed. R. Civ. P. 34 (*e.g.*, October 5, 2018), and thus timely.[65] Defendants also aver, without dispute, that the records were produced within

---

[60] R. Doc. 153, p. 7, 9
[61] R. Doc. 153-2.
[62] The Court also finds Plaintiffs' authority, *Bratka,* 164 F.R.D. 448, factually distinguishable, in that there was evidence of more egregious conduct in the failure to produce the requested records in that case. *Id.* at 460-463.
[63] R. Doc. 153, p. 10.
[64] *See, e.g.*, R. Doc. 140-5, pp. 2, 14-16 served on "your client, Michigan Ladder Company, Inc.," the alleged predecessor of Defendant Michigan Ladder Company, LLC. There are no earlier-served discovery requests in the record.
[65] R. Doc. 144-3 *and see* R. Doc. 135 (Amended Scheduling Order setting an October 31, 2018 fact discovery deadline.)

fifteen days of receipt as a supplement to their initial disclosures, which is reasonably timely under Fed. R. Civ. P. 26(e).[66]

As it stands, Defendants likely also had an interest in obtaining the design and testing records so that they can establish their defenses. It does not logically follow that Defendants would have intentionally withheld these records, which they will presumably rely on to attempt to establish that the subject ladder was not defective (and indeed, they aver that the design and testing records bolster this defense).[67] Further, and as Defendants point out with no dispute from Plaintiffs, Plaintiffs have been culling documents and testimony from the *Horton* case since 2017, and incorporated such information into Nissly's 2017 deposition.[68] It would seem then that Plaintiffs were aware that at least some documents related to design and testing were produced in *Horton*, particularly because Nissly testified in *Horton* that Climbtek documents were produced in *Horton*, and Bayer also referred to reviewing records in *Horton* in order to prepare his affidavits in that case (which Plaintiffs noted herein),[69] yet it does not appear from Nissly's deposition testimony submitted that he was asked specific questions in this case about the design and testing records referenced in *Horton*.

After considering the briefs, the exhibits thereto, and the argument at the hearing on the Motions, the Court does not find that Plaintiffs have made a showing of bad faith conduct by Nissly in this matter warranting sanctions, and there is no indication of any bad faith conduct by the TPA.

---

[66] Fed. R. Civ. P. 26(e) provides, in pertinent part: "(1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…."
[67] R. Doc. 153, pp. 8, 11.
[68] R. Doc. 153, p. 7.
[69] R. Doc. 153-4, p. 26, R. Doc. 144-7, pp. 2, 7, 10, and R. Doc. 144-1, p. 9.

Therefore, Plaintiffs' Motion for Sanctions against Nissly and the TPA pursuant to the Court's inherent power to issue sanctions is **DENIED**.

### B. Motion to Strike

#### 1. Motion to Strike Bayer and Bayer's Report

Plaintiffs seek to strike Bayer, and his expert report, as Fed. R. Civ. P. 37(c) sanctions for Defendants' failure to timely disclose the design and testing records before the expert discovery deadline, and because Plaintiffs allege Bayer has had the unfair advantage of reviewing the design and testing records recently produced prior to providing his expert report in this case. In determining whether to exclude evidence under Fed. R. Civ. P. 37(c) for untimely disclosure, the Court must consider the following four factors: (1) the explanation for the failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to the opposing party in allowing the evidence, and (4) the availability of a continuance.[70] However, the Court does not need to apply these factors because it does not find that the sanctions that Plaintiffs seek are appropriate in light of the complained-of conduct. While Fed. R. Civ. P. 37(c)(1)(C) allows for the striking of pleadings in whole or in part, it provides for that relief when a party fails to timely provide information or identify a witness as required by Fed. R. Civ. P. 26(a) or (e), unless the failure was substantially justified. Plaintiffs admit, however, that they are not seeking to exclude the design and testing records, which is the information the Defendants allegedly failed to timely disclose.[71] Instead, Plaintiffs seek to strike Bayer and his report. The Court does not find that striking Bayer or his report is an appropriate sanction because Plaintiffs have not established that the report or disclosure of Bayer as a witness were untimely. There is no allegation that Defendants

---

[70] *Martino v. Kiewit New Mexico Corp.,* 600 F. App'x 908, 911 (5th Cir. 2015) *citing CQ, Inc. v. TXU Min. Co., L.P.,* 565 F.3d 268, 279–80 (5th Cir. 2009) *and see Broussard,* 2014 WL 354525 at *5.
[71] R. Doc. 144-1, p. 6.

failed to timely identify Bayer or failed to timely produce his report. The design and testing records were produced prior to the fact and expert discovery deadline of October 31, 2018.[72] Defendants have provided an explanation for their failure to identify these records earlier in their Rule 26(a) disclosures and have provided supplemental Rule 26(a) disclosures reflecting these documents, which they are required to do under Rule 26(a) and (e).

Further, to the extent that Plaintiffs seek exclusion of the report on the grounds that Bayer allegedly reviewed the recently-produced design and testing records in preparing his expert report in this case, the evidence does not support this assertion.[73] Plaintiffs did not submit Bayer's report as an exhibit to the instant Motion, but Bayer's September 7, 2018 report, attached to the Motion for Testing, does not reflect that Bayer reviewed any design or testing records in connection with this case.[74] Plaintiffs did not respond to the argument that Bayer's report in this case makes no reference to reviewing design and testing records. While Bayer's *Horton* affidavits indicate that Bayer reviewed Climbtek documents in connection with that case,[75] the Court declines to strike Bayer and his report from this case simply because of Bayer's review of documents eight to nine years ago in unrelated litigation, particularly where those documents do not appear to have been relied upon by Bayer for his expert report in this case.

Finally, the Court declines to strike Bayer and his report as a sanction for Defendants' recent document production. Any prejudice to Plaintiffs arising out of the timing of the production in proximity to the March 2019 trial date appears to have been ameliorated by the District Judge's Order granting of the parties' joint motion for a continuance of the trial date,[76] as the parties

---

[72] R. Doc. 135.
[73] R. Doc. 153, p. 15.
[74] R. Doc. 146-4.
[75] R. Doc. 144-7.
[76] R. Doc. 154.

premised the need for a continuance in part on the document production at issue, and Plaintiffs' request that their expert be allowed an opportunity to review the design and testing records and produce a supplemental report, which they will presumably have time to do in light of the continuance.[77]

### 2. Motion to Strike Defenses

While Fed. R. Civ. P. 37(b)(2)(A)(ii) and (iii) provide for sanctions that prohibit a disobedient party from supporting or opposing designated claims or defenses and the striking of pleadings in whole or in part, Plaintiffs do not offer any argument or authority in support of striking Defendants' defenses. Rather, Plaintiffs' Motion to Strike only offers argument in support of striking Bayer and his report. Even if properly briefed, the Court would decline to strike Defendants' defenses for the same reasons it declines to strike Bayer and his expert report.

## IV. Conclusion

Considering the briefs, the exhibits thereto, and the argument at the conference regarding the Motions, Plaintiffs fail to establish grounds for the requested sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Sanctions; Motion to Strike Defendants' Defenses and Motion to Strike Defendants' Expert, Thomas Bayer[78] are **DENIED**.

Signed in Baton Rouge, Louisiana, on February 1, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[77] R. Doc. 150, ¶ 10.
[78] R. Doc. 144.